**INTERNATIONAL PACKERS, LIMITED, Petitioner,**

v.

**FEDERAL MARITIME COMMISSION,**
**and**
**United States of America, Respondents,**
**Overseas Freight and Terminal Corporation, Intervenor.**

**No. 19271.**

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 30, 1965.

Decided Jan. 25, 1966.

Mr. J. Joseph Noble, New York City, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, with whom Mr. Roy Leifflen, Washington, D. C., was on the brief, for petitioner.

Mr. Walter H. Mayo, III, Atty., Federal Maritime Commission, of the bar of the Supreme Judicial Court of Massachusetts, pro hac vice, by special leave of court, with whom Asst. Atty. Gen. Donald F. Turner and Mr. M. C. Miskovsky, Sol., Federal Maritime Commission, were on the brief, for respondents. Mr. John C. Hunt, Atty., Federal Maritime Commission, also entered an appearance for respondent, Federal Maritime Commission. Mr. Irwin A. Seibel, Atty., Dept. of Justice, also entered an appearance for respondent, United States.

Mr. Marvin J. Coles, Washington, D. C., with whom Messrs. Donald D. Webster and Armin U. Kuder, Washington, D. C., were on the brief, for intervenor. Mr. Stanley O. Sher, Washington, D. C., also entered an appearance for intervenor.

Before BASTIAN, Senior Circuit Judge, and BURGER and TAMM, Circuit Judges.

BURGER, Circuit Judge:

Petitioner seeks review of an order of the Federal Maritime Commission finding valid a surcharge made against petitioner by Intervenor Overseas Freight and Terminal Corporation. This Court has jurisdiction under the Administrative Orders Review Act § 2, 64 Stat. 1129 (1950), as amended, 5 U.S.C. § 1032 (1964).

The facts are not in dispute. Petitioner International Packers, Ltd., (Shipper) shipped a cargo of perishable meats aboard a ship operated by Intervenor (Carrier) from Europe to certain United States Gulf Coast ports. The ship arrived at Tampa, Florida, its first port of call, to find that a longshoremen's strike had just begun and had closed all Atlantic and Gulf ports of the United States. It is conceded that the Carrier made every effort to discharge cargo in United States ports but was unable to do so. It then proposed unloading at a Puerto Rican or Mexican port, but none of those had facilities for storage or quick transportation in appropriate facilities of the frozen meat. The Shipper asked Carrier not to unload at any of those ports, and the Carrier then proceeded to dock at Mobile, Alabama, and await opening of the United States ports.

The strike lasted for 33 days after the ship's arrival, directly causing the Carrier additional costs for fuel to keep the cargo refrigerated and for added charter costs of the ship, which the Carrier had chartered from an unrelated company for $1750 a day. The Carrier's total extra expenses were about sixty thousand dollars.

When the strike ended, the Carrier unloaded the cargo and assessed a prorated surcharge against all the shippers on this voyage amounting to 125 per cent of the basic freight charge. The Carrier computed this surcharge by adding its total strike-caused expenses, then assessing one half to itself and assessing half against the shippers pro rata according to the freight charge.[1] Petitioner, whose original freight charge was about eight thousand dollars, was thus obligated to pay approximately ten thousand dollars more. As authority for this surcharge, the Carrier relied upon paragraph 4 of the bill of lading, which provides in relevant part:

> In any situation * * * whether existing or anticipated before commencement of or during the voyage, which in the judgment of the carrier or the master is likely to give rise to risk of * * * delay * * * or to give rise to delay or difficulty in arriving, discharging at, disembarking at or leaving the port of

---

1. The Carrier's action in absorbing half of the strike-caused extra expense and passing on half to the Shippers was arbitrary. At oral argument it was contended that the Carrier would have been justified in passing the entire extra cost to the Shippers.

discharge or the usual or agreed or intended place of discharge or debarkation in such port, the carrier or the master may before, during or after loading or before the commencement of the voyage, require the shipper or other person entitled thereto to take delivery of the goods at port of shipment and upon failure to do so may discharge and warehouse or otherwise store the goods, or any part thereof, at the risk and expense of the goods * * *; or the ship may proceed or return, directly or indirectly to or stop at any such port or place whatsoever as the master or the carrier may consider safe or advisable under the circumstances, and discharge the goods * * * at any such port or place; or the carrier * * * may retain the cargo * * * until the return trip or until such time as the carrier or the master, thinks advisable and discharge the goods * * * at any place * * * including the port of shipment; or the carrier or the master may discharge and forward the goods, or any part thereof, by any means, rail, water, land or air, * * * at the risk and expense of the goods. * * For any service rendered to the goods as hereinabove provided, the carrier shall be entitled to extra compensation; and if in following the procedure permitted herein the length or duration of the voyage of the ship is increased the shipper and consignee shall pay proportionate additional freight, all of which shall be a lien on the goods.

The Federal Maritime Commission, on its own motion, instituted an investigation of the validity of the surcharge and, after proceedings in which the shipper participated as intervenor, held it a valid charge. The Shipper now seeks reversal of the Commission's order on the ground that the surcharge violates the Shipping Act of 1916, §§ 16, 17, 39 Stat. 734, § 18(b), added by 75 Stat. 764 (1961), as amended, 46 U.S.C. §§ 815, 816, 817(b) (1964).

The surcharge is challenged primarily under Section 18(b), enacted as an amendment to the Act in 1961, which requires carriers in foreign commerce to file with the Commission all tariffs to or from United States ports. Carriers may not change such tariffs without publication and filing of the new rates and the expiration of thirty days from the date of publication and filing, and carriers are prohibited from charging "a greater or less or different compensation for the transportation of property or for any service in connection therewith than the rates and charges which are specified in its tariffs on file with the Commission and duly published and in effect at the time * * *." The shipper's contention is that the bill of lading provision quoted above leaves the carrier such wide discretion in setting extra charges that its filing cannot be said to be compliance with Section 18(b), and the surcharge assessed in the present case exceeded any charge which can be said to be "specified" in the tariff on file, even including the bill of lading. The shipper does not claim that the amount of this surcharge was "unreasonable."

█ Petitioner also contends that the inclusion of the surcharge provision in the bill of lading attached to the back of the tariff filed with the Commission does not satisfy the requirement that all charges be specified in the "tariff." We find this contention without merit. No purpose could be served by requiring a carrier to repeat in its tariff explicitly all the provisions of its bill of lading when that bill is filed along with the tariff itself and its provisions are incorporated by reference, as here. The cases cited by the petitioner to the effect that specification of charges in the bill of lading does not satisfy the statute all dealt with bills of lading not filed with the tariff, as is now required by the statute. The other questions to which the parties have stipulated need not be decided by us. No party has argued that petitioner lacks standing, although

that was stated as one of the questions. In addition, petitioner raises three other claims, which intervenor argues petitioner waived before the Commission. As to these points, petitioner says, correctly:

> [W]hile these three points which the intervenor says were waived are interwoven with the main thread of the argument, the main point to be considered involved the proposition that the carrier did not file with the Commission a rate or charge on the basis of which the surcharge was predicated * * *, but charged a greater and different compensation in violation of the statute * * *.

The Hearing Examiner in his Initial Decision, which was adopted by the Commission, rejected this claim, saying

> The suggestion for establishing a fixed charge for such delays would probably lead to greater evil than an *ad hoc* determination of the costs, after the event, because the actual expenses of the carrier might turn out to be somewhat less than the charges that would have to be assessed under a fixed formula. It would not be appropriate for the carrier to profit by a strike or casualty that results in delay or extension of the voyage. The charge here is not arbitrary, being related directly to the added expenses of the carrier.
>
> * * * It is apparent that tariff provisions as to [regular, determinable voyage] * * * charges can be as a practical matter, more exact than the clauses in the tariff whose purpose is to provide for the unknown, unforeseeable complexities of ocean transportation. The least that can be said is that neither Hearing Counsel nor intervener have suggested any solutions to this practical difficulty in tariff practices, and none occur to the Examiner, that are so patently superior to the course followed by respondent that it can be held that respondent committed a violation of section 18(b).

■■ This is clearly a question the resolution of which must be left primarily to the agency with expert experience in the everyday realities of the shipping industry, and to which Congress has entrusted primary responsibility for effectuating the purposes of the Act. The statute calls for the filing of rates and charges and any rules or regulations affecting those charges. The Commission is far better suited than courts to determine what degree of specificity is required in a particular situation, in light of the practicalities of the shipping industry. "[W]here the question is one of specific application of a broad statutory term in a proceeding in which the agency administering the statute must determine it initially, the reviewing court's function is limited." N. L. R. B. v. Hearst Publications, Inc., 322 U.S. 111, 131, 64 S.Ct. 851, 860, 88 L.Ed. 1170 (1944). We cannot say that the Commission's decision, based on the broad considerations set forth, lacks "warrant in the record" or "a reasonable basis in law," and we therefore affirm its decision.

Affirmed.